| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF DENVER, COLORADO<br><br>Denver City & County Building<br>1437 Bannock St., Room 230<br>Denver, CO 80202 | DATE FILED: May 23, 2023 2:16 PM<br>FILING ID: BF25EB2566334<br>CASE NUMBER: 2023CV31514<br><br><br><br>▲COURT USE ONLY▲ |
| **Plaintiff**: SONG YANG<br><br>vs.<br><br>**Defendants**:<br>CITY AND COUNTY OF DENVER, a Colorado municipality;<br>OFFICER DEBETS (whose true first name is unknown), Denver Police Officer, in their official and individual capacity;<br>OFFICER S.D. KENOYER (whose true first name is unknown), Denver Police Officer, in their official and individual capacity;<br>OFFICER JAMES A. WHISENTON, Denver Police Officer, in his official and individual capacity;<br>CORPORAL FREDERICK G. KITCHENS, Denver Police Officer, in his official and individual capacity;<br>SERGEANT TOM POGERT, Denver Police Officer, in his official and individual capacity;<br>CHIEF RON THOMAS;<br>FORMER CHIEF PAUL PAZEN; AND<br>JOHN AND JANE DOES 1-50, whose true names are unknown. | |
| *Attorney for Plaintiff*<br>M. Trent Trani<br>M. TRENT TRANI & ASSOCIATES, P.C.<br>44 Cook St., Suite 100<br>Denver, CO  80206<br>Office Number: (303) 333-1816<br>Fax Number: (303) 845-9488<br>Email Address:  trent@tranilaw.com<br>Atty. Reg. No. 31001 | Case Number:<br><br>Div/Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

Song Yang ("Plaintiff" or "Ms. Yang") by and through her attorney, M. Trent Trani of the Law Firm of M. Trent Trani & Associates, P.C., respectfully alleges for her Complaint and Jury Demand as follows:

## **INTRODUCTION**

1. On May 25, 2022, three City and County of Denver police officers, Debets, Kenoyer, Whistenton, Kitchens, Pogert and John or Jane Does 1-50, ("Defendant Officers") without warning, with guns drawn, banged on the apartment door of Song Yang, who was almost 59 years-old at the time. Her peaceful world was ripped apart when confronted by those officers, who were pointing two with automatic rifles at her and one officer in front of her pointing a hand gun. Defendant Officers yelled at Ms. Yang to open her door and exit her apartment.

2. Defendant Officers went to the wrong apartment number and should have gone next door. The person Defendant Officers were looking for was an ex-neighbor by the name "Qu nton" who use to live in apartment 310, next door to Ms. Yang's apartment number 312. Defendant Officers failed to make basic checks and verify the correct apartment number and legal occupants. Further, had Defendant Officers obtained a physical description of "Qu nton" they would have discovered that "Qu nton" is a male, late 20's with curly, brown hair.

3. At the time of the incident, Ms. Yang lived with her son, daughter-in-law, and husband at 18444 E. 54th Avenue, Apartment 312, Denver, Colorado 80249. Ms. Yang, who is of Asian descent, has limited English proficiency and limited ability to speak and understand English. She is also very short at about 4'9" and has brown hair. It was obvious that Ms. Yang did not pose a threat to the officers or others.

4. Defendants' actions caused Ms. Yang to endure physical injury, pain, suffering, humiliation, extraordinary trauma, emotional distress, loss of enjoyment of life, and other damages. Ms. Yang enjoyed a rich, happy life prior to this event. On May 25, 2022, her life forever changed to a life that became one of fear when leaving her residence, and fear of seeing police officers.

5. Ms. Yang was illegally seized by Defendant Officers by use of excessive force and she brings this action to seek accountability from the Defendant Officers and their commanders who work within a police department that has a history of failing to double-check information.

6. As a direct and proximate result of Defendants' unreasonable actions or inactions, Plaintiff suffered and continues to suffer injuries, damages and losses as more fully described within this Complaint.

7. Plaintiff seeks all available relief, including damages based on Defendant's unlawful seizure and excessive force.

8. This action is against the City and County of Denver, and several officers for unlawful seizure, excessive force, and the denial of equal protection of the law, in violation of the Colorado Constitution, article II, sections 7 and 25, and is brought under Colorado Revised Statutes section 13-1-124(b).

## JURISDICTION AND VENUE

9. Plaintiff has complied with the notice requirements and has provided timely and proper written notice of claim to defendants pursuant to the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-109. Plaintiff has not received any notice that Plaintiff's claim was denied.

10. This Court has jurisdiction under Colo. Rev. Stat. § 13-1-124(1)(b).

11. The conduct complained of herein occurred in the City and County of Denver, State of Colorado. Venue is proper under C.R.C.P. 98(c)(5).

## PARTIES

12. At all times relevant to this Complaint, Plaintiff Song Yang was a citizen and resident of the State of Colorado.

13. Defendant City and County of Denver was at all times relevant to this Complaint, a Colorado municipality organized under the laws of the State of Colorado. Defendant City and County of Denver enforces local and state law through its law enforcement agency, the Denver Police Department ("DPD").

14. At all times relevant to this Complaint, Defendant City and County of Denver ("Denver") employed and was responsible for the oversight, supervision, discipline, and training of DPD personnel including Officer Defendants.

15. Defendant Officers were agents of the City and County of Denver and at all relevant times were acting within the course and scope of their agency.

16. At all times relevant to this Complaint, Defendant Officer Debets, officer number P15072 (whose first name is unknown at this time), was acting within the scope of their official duties and employment and under color of state law in their capacity as a DPD officer. At all relevant times, Defendant Debets was a citizen of the United States and resident of the State of Colorado. Officer Debets is a named Defendant in their individual capacity. Plaintiff will seek leave from the Court to show the true first name of Officer Debets when the same has been ascertained.

3

17. At all times relevant to this Complaint, Defendant S.D. Kenoyer, officer number P17027 (whose first name is unknown at this time), was acting within the scope of their official duties and employment and under color of state law in their capacity as a DPD officer. At all relevant times, Defendant Kenoyer was a citizen of the United States and resident of the State of Colorado. Officer Kenoyer is a named Defendant in their individual capacity. Plaintiff will seek leave from the Court to show the true first name of Officer Kenoyer when the same has been ascertained.

18. At all times relevant to this Complaint, Defendant James A. Whisenton, officer number P21054, was acting within the scope of their official duties and employment and under color of state law in their capacity as a DPD officer. At all relevant times, Defendant Whisenton was a citizen of the United States and resident of the State of Colorado. Officer Whisenton is a named Defendant in their individual capacity.

19. At all times relevant to this Complaint, Defendant Frederick G. Kitchens, officer number P04012, was acting within the scope of their official duties and employment and under color of state law in their capacity as a DPD Corporal. At all relevant times, Defendant Kitchens was a citizen of the United States and resident of the State of Colorado. Officer Kitchens is a named Defendant in their individual capacity.

20. At all times relevant to this Complaint, Defendant Tom Pogert,(officer number unknown at this time) was acting within the scope of their official duties and employment and under color of state law in their capacity as a DPD Sergeant. At all relevant times, Defendant Pogert was a citizen of the United States and resident of the State of Colorado. Sergeant Pogert is a named Defendant in their individual capacity.

21. At all times relevant to this Complaint, DPD Chief Ron Thomas was acting within the scope of his official duties and employment and under color of state law in his capacity as Chief of Police for DPD. At all relevant times, Defendant Thomas was a citizen of the United States and resident of the State of Colorado.

22. At all times relevant to this Complaint, DPD Former Chief Paul Pazen was acting within the scope of his official duties and employment and under color of state law in his capacity as Chief of Police for DPD. At all relevant times, Defendant Pazen was a citizen of the United States and resident of the State of Colorado.

23. At all times relevant to this Complaint Defendant Thomas has the authority and obligation to make and enforce policy for, train, supervise, oversee, and discipline all DPD officers, including Defendant Officers.

24. At all times relevant to this Complaint Defendant Pazen has the authority and obligation to make and enforce policy for, train, supervise, oversee, and discipline all DPD officers, including Defendant Officers.

25. At all times relevant, Defendants John and Jane Does 1-50 are officers, employees or agents of the DPD, who were acting in the scope of their official duties and employment

with the express authorization of the DPD, who gave orders for and/or participated in the subject incident that occurred on May 25, 2022. They are also sued in their professional and individual capacities as sworn police officers for the City and County of Denver. Plaintiff sues said unknown Defendants John and Jane Does 1-50 by such fictitious names and will ask leave of the Court to amend this Complaint to show said John and Jane Does' true names and service addresses when the same has been ascertained together with appropriate charging allegations and to join said Defendants in this action. Plaintiff identifies John and Jane Does 1-50 as possible additional liable parties. Plaintiff alleges on information and belief that John and Jane Does 1-50 are in some manner responsible for the acts or omissions alleged herein. Plaintiff further reserves the right to amend this Complaint with additional claims and information relevant to this action.

26. Defendant Officers Debets, Kenoyer, Whistenton, Kitchens, Pogert and John or Jane Does 1-50 are collectively known herein as "Defendant Officers."

27. Defendant Officers and Defendants Chief Thomas and former Chief Pazen are collectively known herein as "Individual Defendants."

28. At all times relevant to this Complaint, all Defendants were acting under color of state law.

## FACTUAL ALLEGATIONS

### A. Defendant Officers Unlawfully Seized Plaintiff Through the Use of Excessive Force.

29. At 19:14:29 on May 25, 2022, according to the Denver Incident Detail Report, Number DPD-22-0263310 ("Report"), Denver 911 dispatch received a phone call indicating "219 NFO FROM AURORA - SUBJ AT LOC HAS A GUN AND EXPRESSED INTENTION AND DESIRE TO HARM PEOPLE – INFO VIA TEXT NOW[Shared]."

30. At 19:15:15, the Report indicated "219 TEXT SAID HE CALLED THE HOSPITAL TO LET THEM KNOW THAT HE DID NOT WANT TO HARM HIMSELF, BUT DID WANT TO HARM OTHERS [Shared]."

31. At 19:15:25 the Report indicates "219 NO DESC OF QU NTON [Shared]."

32. Defendant Officers did not obtain a physical description of "Qu nton."

33. Defendant Officers did not verify the correct apartment number.

34. "Qu nton" is the individual who used to lived next door to Ms. Yang in apartment number 310 at 18444 E. 54th Avenue, Denver, Colorado 80249.

5

35. Ms. Yang and her family lived in apartment number 312 at 18444 E. 54th Avenue, Denver, Colorado 80249.

36. At 19:15:30 the Report indicates "219 NO PHONE NUMBER AVAIL FOR SUBJ [Shared]."

37. At 19:15:55 the Report indicates "219 >>>>>>CALLER ▬▬▬▬▬▬▬- UNK PHONE >>>>>>> CALLER CONTACT – UNABLE TO ASK <<<<<< [Shared]."

38. At 19:16:43 the Report indicates "PATROL SUPERVISOR NOTIFIED OF INCIDENT HOLDER 270A [Shared]."

39. At 19:19:28 the Report indicates "219 FOUND ANOTHER ADDRESS AND PHONE FOR ▬▬▬▬▬▬▬ SEARCH AND PHONE HX [Shared]."

40. At 19:24:52 the Report indicates "PLEASE CHECK THIS DIST 5 ADDRESS."

41. Plaintiff is unable to identify each Defendant Officer's full name and specific conduct and use the term "Defendant Officers" to refer to one of the following individuals: Defendant Debets, Kenoyer, Whistenton, Kitchens, Pogert or John or Jane Does 1-50, individually or collectively involved in the incident.

42. Body worn camera footage on Defendant Officers show one of the Defendant Officers banging on Ms. Yang's apartment unit 312.

43. When Ms. Yang heard the banging on her apartment door, she was cooking dinner for her family.

44. Ms. Yang had no warning from these Defendant Officers.

45. Despite feeling frightened, Ms. Yang slowly cracked her door open to find guns pointed at her.

46. Body worn camera footage show, a Defendant officer point his gun directly at Ms. Yang.

47. Body worn camera footage show two Defendant Officers located on the opposite side of her apartment door also with their automatic rifles drawn and pointed at Ms.Yang.

48. Defendant Officers yell at Ms. Yang to exit her apartment.

49. At all relevant times and on information and belief, these DPD officers were acting at Defendants Kitchen or Sergeant Pogert's direction.

6

50. At all relevant times and on information and belief, the Defendant officers were acting at their supervisor's direction.

51. Ms. Yang opened her apartment door further and stepped outside of her apartment upon the command of the Defendant Officers.

52. Ms. Yang stands about 4'9."

53. Ms. Yang is of Asian descent and is not proficient in English.

54. There was no indication that Ms. Yang posed any danger to the Defendant Officers.

55. Feeling with extreme fear, Ms. Yang had a hard time comprehending what the Defendant Officers were stating.

56. Defendant Officers' body cam footage indicates that one of the Defendant Officers states "is this Qu nton?"

57. Defendant Officers questioned Ms. Yang about who else was in her residence.

58. While weapons still drawn and pointed at Ms. Yang, she told Defendant Officers, "my husband."

59. In response to questioning about "Qu nton," Ms. Yang indicates "no, we don't know him."

60. During the questioning, Ms. Yang also advised the Defendant Officers that they were Asian.

61. With guns still drawn and pointed at Ms. Yang's direction further questioning by Defendant Officers takes place.

62. Ms. Yang upon questioning advised the Defendant Officers that she had lived in that apartment number 312 for the last year.

63. Then, Defendant Officers questioned Ms. Yang about her husband's name to which she responded "Juan."

64. After many minutes had already gone by with guns pointed at Ms. Yang, Defendant Officers finally asked what Ms. Yang's name was.

65. Ms. Yang told the Defendant Officers that "you scared me."

66. Pointing a gun at someone is a "use of force" it is deemed excessive if the police have no probable cause to believe a crime has been committed and that they are at personal risk.  Here, the only report was from a vague message as indicated above.  There was

7

no indication that Ms. Yang or anyone else was in danger whatsoever, yet Defendant Officers pulled their guns and held innocent Ms. Yang at gunpoint for absolutely no reason.

67. Had Defendant Officers and their supervisors contacted property management for Ms. Yang's apartment complex, they would have discovered that the individual "Qu nton" never lived in apartment 312.

68. Ms. Yang and her family resided in 18444 E. 54th Avenue, Apartment 312, Denver, Colorado 80249.

69. Defendant Officers and their supervisors should have known after contacting property management of Ms. Yang's apartment complex that the individual they were seeking to make contact with was Quinton Swiney who resided previously in apartment 310.

70. Quinton Swiney resided in 18444 E. 54th Avenue, Apartment 310, Denver, Colorado 80249.

71. Quinton Swiney moved out of apartment 310 in April 2022.

72. Had Defendant Officers and their supervisors contacted property management for Ms. Yang's apartment complex, they would have discovered that Ms. Yang and her family resided in apartment 312.

73. Defendant Officers and their supervisors failed to obtain information that "Qu nton" used to live in apartment 310 when they had the ability to do so.

74. Defendant Officers and their supervisors failed to take reasonable investigative steps to verify the correct address.

75. Defendant Officers and their supervisors failed to contact the property management of Ms. Yang's apartment complex to verify whether "Qu nton" even lived in the apartment complex.

76. Defendant Officers and their supervisors failed to properly investigate that would have showed "Qu nton" had not lived in apartment 310 since April 2022.

77. Defendant Officers and their supervisors did not have trustworthy information from dispatch concerning "Qu nton" whom they were looking for.

78. Defendant Officers never had any reasonable suspicion or probable cause to believe that Ms. Yang was dangerous or committed any offense.

79. Defendant Officers and their supervisors failed to obtain a physical description of "Qu nton."

80. Defendant Officers and their supervisors failed to verify the legal occupants of the residence located in apartment 312 at 18444 E. 54th Avenue, Denver, Colorado 80249 when they had the ability to do so.

81. On information and belief, Defendant Officers and their supervisors were provided with a phone number allegedly belonging to "Qu nton."

82. Defendant Officers and their supervisors contacted that number and left a voice mail message but failed to make contact with "Qu nton."

83. Ms. Yang was not posing a threat to the safety of the officers or others.

84. Ms. Yang was not and is not capable of causing injury or death based on her physical ability, size, and age.

85. Ms. Yang was not showing any aggression whatsoever.

B. **Ms. Yang Suffers as a Result of Defendant Officers' Illegal Conduct**

86. Defendant Officers caused Ms. Yang to be in fear for her life and she suffered severe distress and medical complications due to Defendant Officers' conduct.

87. It took months before Ms. Yang felt safe to leave her apartment and now experiences fear whenever she sees police officers. She continues therapy to attempt to help her deal with what happened that day and post-traumatic stress.

88. Ms. Yang struggles to sleep and the stress from the incident caused her to pass out, which required hospitalization.

89. As a result of Defendant Officer's violation of her right to be free from unreasonable seizures, Ms. Yang suffered, and continues to suffer, severe physical and emotional distress.

90. Defendants' actions caused Ms. Yang to endure physical injury, pain, suffering, humiliation, extraordinary trauma, emotional distress, loss of enjoyment of life, and other damages.

91. The acts or omissions of the Individual Defendants were the moving force behind, and the proximate cause of the injuries suffered by Plaintiff.

C. **Defendants' Thomas' and Pazen's failure to adequately train, supervise, and discipline DPD officers.**

92. Defendant Chief Ron Thomas and Former Chief Paul Pazen ("Defendant Chiefs") have a consistent failure to adequately train, supervise, and discipline DPD Officers in issues relating to policing, unreasonable searches and seizures, improper investigations and

9

verification of information and excessive force behind Defendant Officers' unlawful seizure of Plaintiff.

93. DPD has a custom, policy, and/or practice of unlawful conduct including but not limited to using excessive force, unlawfully detaining, searching, arresting, or charging people and failing to discipline officers or even find the officers engaged in wrongdoing.

94. DPD's training regimen is relatively unchanged, and to maintain its policies, practices and procedures knowing that doing so leads to unconstitutional encounters including those described herein, demonstrates deliberate indifference to the fundamental constitutional rights of people including Plaintiff in this action.

95. As a result of Defendant Chief's failure to adequately discipline DPD officers who commit violations of the law, they have communicated to DPD officers that such violations are authorized and expected. It has been customary among DPD officers to unlawfully seize individuals and use unjustified and excessive force against them.

96. Denver's unlawful customs, policies and practices are demonstrated by its history of misconduct, and brutality, as reflected in both a statistical analysis of its policing and by the many other incidents involving DPD officers engaging in such conduct. Accordingly, Defendant Chiefs knew or should have known of the obvious risk of harm faced by individuals contacted by DPD yet they took no action or inadequate action to address such risk.

**D. DPD Officers Have a History of Failing to Verify and Gather Trustworthy Intelligence.**

97. Denver's unlawful customs, policies, lack of training, and/or practices are demonstrated by many incidents of violating individuals' constitutional rights against unreasonable searches and seizures.

98. For example, on August 2, 2019, DPD arrested the wrong woman, Sarah Cook at Denver Health for a crime she did not commit. Ms. Cook was seeking treatment at Denver Health after being possibly drugged and sexually assaulted. Another woman who DPD was looking for was suspected of burglarizing a downtown building. DPD was told the suspected woman was sent to St. Joseph's Hospital, instead DPD went to Denver Health, the wrong hospital and arrested Ms. Cook. DPD did not confirm or ask when Ms. Cook was admitted to the Denver Health or review the call notes that described the suspect and where the suspect was transported in order to establish that Ms. Cook was the suspect. Ms. Cook had black hair and was very tall; the suspect had blond hair and was short. DPD did not confirm with dispatch, emergency medical personnel, or anyone else which hospital the suspect had been transported to or confirm the suspect's physical description. Police dropped the charges against Ms. Cook and the officers involved in the arrest faced disciplinary actions. DPD made an arrest, based

10

on identifying information that they use, which was extremely vague. A lawsuit based on this incident including an unlawful search and seizure was filed.

99. On May 7, 2020, Denver police officers held Naphtali Israel's three stepdaughters, ages 2, 7 and 14 at gunpoint in a Safeway parking lot while he was inside shopping. This was based on a 911 call and the only report, that a black man in a white hoodie was alone in a car with a gun. Denver police officers did not have probable cause or any legal basis to detain, search or use force against Mr. Israel and his stepdaughters. There was no cause to believe a crime had been committed or they were at personal risk. The DPD officer who held the stepdaughters at gunpoint did not have any reason to believe that they were in any danger. There was no man in the car with a white hoodie. The girls were terrified. Once Mr. Israel became notified of the incident taking place by another individual in the store, he quickly exited then he became the target, held by gunpoint, handcuffed and searched by Denver Police, even though he was not wearing a white hoodie or was sitting in the vehicle. Mr. Naphtali was released after about two minutes of being cuffed and held at gunpoint. Another lawsuit for violations of constitutional rights including unlawful seizure and excessive force against the involved DPD Officers was filed.

100. On January 4, 2022, Denver Police Department SWAT team with officers in full-body armor, and carrying automatic weapons arrived at the home owned by Ruby Johnson a 77-year-old grandmother and retired United States Postal Worker, who was home alone at the time. A day earlier, DPD was investigating truck that had been stolen from a nearby Hyatt garage that contained semi-automatic weapons, a military-style rifle, two drones, some cash and an old iPhone 11. When the investigating, a DPD officer contacted the man who owned the stolen vehicle, the man told the DPD officer that he used the Apple "Find My" app that indicated the phone "pinged" somewhere in the vicinity of Ms. Johnson's home but did not give a precise location (the vicinity of the "ping" was a much greater area encompassing at least six additional, different properties and parts of four different blocks in the vicinity). Despite this, the investigating DPD officer without verifying information or follow-up with the owners of these properties, obtained a search warrant to search Ms. Johnson's home for the stolen items. DPD arrived at Ms. Johnson's home, at gun point ordered her to exit with her hands up. She was terrified and disoriented as she exited to find numerous men in full military technical gear, guns drawn and police vehicles everywhere. A lawsuit based on this incident claiming violations of the state constitution's prohibition against unreasonable search and seizure against the individual DPD officer is pending.

101. Defendants were engaged in these acts pursuant to formal or informal custom, policy and practice of the City of Denver, which encourages, condones, tolerates, and ratifies the false arrest and unlawful seizure of its citizens by law enforcement officers.

102. The formal or informal custom, policy and practice of the City of Denver is so permanent and well settled as to constitute custom by high-ranking officers, the

        Chief of Police of the City of Denver with final policymaking authority – and has been ratified by such policymakers.

103. Defendants City and County of Denver, Denver Police Department and Defendants Chiefs are responsible for effectively training DPD officers but failed to do so concerning this incident.

104. Defendants City and County of Denver, Denver Police Department and Defendant Chiefs are responsible for effectively training DPD officers regarding what is required before officers may seize a person, including Plaintiff, order them outside their residence and hold them a gunpoint.

105. The Defendant Officers involved in this incident did not have appropriate training. If they did have proper training, they would have verified they had the correct address before ordering Plaintiff out of her apartment, using excessive force and unlawfully detaining and holding Plaintiff at gunpoint.

106. The Denver Police Department's Operations Manual and Training Manual contain information governing the Law Enforcement Code of Ethics, rules, regulations, and duties for the information and guidance required by DPD Officers including proper identification and verification of addresses, proper search and seizure to name a few. The Defendant Officers failed to follow those Code of Ethics, rules, regulations and duties.

107. Defendant Officers' conduct was unreasonable and violated Denver Police Department policies.

108. Upon information and belief Defendant Officers and their supervisors had previously failed to adhere to DPD's written policies.

109. Upon information and belief Defendant Officers and their supervisors had not been previously disciplined for failures to adhere to DPD's written policies.

110. Defendant City and County of Denver and Defendants Chiefs should have pursued reasonable methods for training and supervising DPD officers, including Defendant Officers, in these areas to eliminate or reduce the risks of unconstitutional police behavior, but they failed to do so.

111. Defendant City and County of Denver and Defendants Chiefs' failure to adequately train and supervise DPD officers in the relevant areas, was a proximate cause of Defendant Officers' unlawful seizure of Plaintiff and excessive force against her.

112. Defendant City and County of Denver and Defendants Chiefs are liable for Defendant Officers' and their Supervisors actions and omissions for violations of Plaintiff's rights.

12

113. Defendant City and County of Denver and Defendants Chiefs are liable for Defendant Officers' and their Supervisors failures to adequately investigate.

114. Defendant City and County of Denver's and Defendants Chiefs' failure to adequately address prior similar unlawful conduct sent a message to DPD law enforcement officers that such misconduct is accepted and approved.

115. Defendant City and County of Denver's and Defendants Chiefs' past acceptance, ratification and toleration of similar illegal conduct, and their failures to adequately train and supervise DPD officers in the relevant areas, was a proximate cause of Officer Defendants' unlawful search and seizure of, and excessive force against, Plaintiff.

## STATEMENT FOR CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Colo. Rev. Stat. § 13-21-131
### Colo. Const. Art. II, Section 7 – *Unlawful Seizure*

116. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

117. The Individual Defendants acted under color of state law and within the course and scope of their employment as DPD law enforcement officers at all times relevant to the allegations in this Complaint.

118. At all relevant times, the Individual Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

119. Plaintiff had a protected interest under the Colorado Constitution, Article II, § 7 in being secure in her person from unreasonable seizures by law enforcement personnel.

120. Defendant Officers, acting in concert with one another, unreasonably seized and detained Plaintiff, in violation of the Constitution of the State of Colorado.

121. Defendant Officers did not allow Plaintiff to leave, and deprived her of her freedom of action for a sustained period of time.

122. Defendant Officers did not at any time during their encounter with Plaintiff have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Plaintiff had committed, were committing, or were about to commit any violation of law.

123. Defendant Officers did not at any time have a reasonable basis for believing that Plaintiff was a danger to herself or others.

13

124. Defendant Officers did not at any time have a warrant authorizing any seizure of Plaintiff.

125. Defendant Officers seized Plaintiff against her will, despite lacking any legally valid basis for the seizure.

126. Defendant Officers violated Plaintiff's state constitutional rights by engaging in an unlawful seizure of Plaintiff that was objectively unreasonable considering the facts and circumstances confronting Defendant Officers before and during their encounter with Plaintiff.

127. Defendant Officers engaged in a collective plan or effort to seize Plaintiff without probable cause or reasonable suspicion, or alternatively, each Defendant Officer failed to take reasonable steps to intervene in the other Defendant Officer's unlawful seizure of Plaintiff, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unlawful and unreasonable seizure of Plaintiff.

128. Defendant Officers subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

129. Defendant Officers did not act upon a good faith and reasonable belief that their actions in seizing Plaintiff without probable cause or reasonable suspicion were lawful.

130. The acts or omissions of the Defendant Officers were the moving force behind, and the proximate cause of, injuries sustained by Plaintiff.

131. Defendants Thomas and/or Pazen failed to reasonably train and supervise DPD officers, including Defendant Officers, in specific issues relating to seizures without probable cause or reasonable suspicion, despite the obvious need to do so.

132. Defendants Thomas and/or Pazen knew or should have known that their failure to adequately supervise and train DPD officers in such issues relating to the unlawful seizures was likely to harm individuals like Plaintiff it was reasonably foreseeable that their failures in these areas would cause the harm or a similar harm that Plaintiff suffered, are suffering and will suffer.

133. In failing to reasonably train and supervise DPD officers, including Defendant Officers, in such issues relating to unlawful seizures, Defendants Thomas and/or Pazen cause Plaintiff to be subjected to deprivation of her rights to be secure in her person against unreasonable seizures, as guaranteed by the Colorado Constitution, Article II, §7.

134. Defendants Thomas's and/or Pazen's actions and omissions violated Plaintiff's state constitutional rights, and were a substantial and significant contributing cause and proximate cause of Plaintiff's damages.

135. Defendants Thomas and/or Pazen did not act upon a good faith and reasonable belief that their actions and omissions in failing to adequately train and supervise DPD officers in this area were lawful.

136. Defendant City and County of Denver is liable for the acts and omissions of its agents and/or employees, and for the herein described acts by Individual Defendants, who were acting within the scope and course of their employment.

137. The Individual Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Individual Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

## SECOND CLAIM FOR RELIEF
## Colo. Rev. Stat. § 13-21-131
## Colo. Const. Art II, Section 7 – *Excessive Force*

138. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

139. The Individual Defendants acted under color of state law and within the course and scope of their employment as law enforcement officers at all times relevant to the allegations in this Complaint.

140. At all relevant times, the Individual Defendants were "peace officers" under Colo. Rev. Stat. § 24-31-901(3) and were employed by a local government.

141. Plaintiff had a protected interest under the Colorado Constitution, Article II, § 7 in being secure in her person from unreasonable seizures by law enforcement personnel.

142. Defendant Officers seized Plaintiff by means of unreasonable and excessive force, including pointing guns at Plaintiff.

143. Defendant Officers did not have, at any time before or during their encounter with Plaintiff, a legally valid basis to seize Plaintiff.

144. Defendant Officers unlawfully seized Plaintiff by means of excessive force.

145. Defendant Officers had no warrant authorizing any seizure of Plaintiff.

146. Plaintiff had committed no crime and Defendant Officers did not have probable or reasonable suspicion to believe that Plaintiff had committed, was committing, or was going to commit a crime.

147. Defendant Officers had no reasonable basis to believe Plaintiff posed a threat of harm to Defendant Officers or any other officers, Plaintiff, or anyone else, especially as Plaintiff was obviously unarmed.

148. Before and during Plaintiff's encounter with Defendant Officers, Plaintiff made no attempt to flee from Defendant Officers or other officers, nor did Plaintiff resist Defendant Officers' commands and action toward Plaintiff.

149. Defendant Officers did not have a legally valid basis to seize Plaintiff in the manner and with the level of force used under the circumstances presented.

150. Defendant Officers use of force against Plaintiff, as described herein, was objectively unreasonable in light of the circumstances confronting them before and during the encounter with Plaintiff.

151. Defendant Officers violated Plaintiff's state constitutional rights by using objectively unreasonable and excessive force against Plaintiff.

152. Defendant Officers engaged in a collective plan or effort to use unreasonable and excessive force against Plaintiff, or alternatively, each Defendant Officer failed to take reasonable steps to intervene in the other Defendant Officers' unlawful use of force against Plaintiff, despite being in a position and having the opportunity to do so. Each is therefore liable for the damages resulting from the objectively unreasonable and excessive use of force against Plaintiff.

153. Defendant Officers subjected or caused Plaintiff to be subjected to the deprivation of individual rights secured by the bill of rights of the Colorado Constitution.

154. Defendant Officers did not act upon a good faith and reasonable belief that their actions in using unreasonable and excessive force against Plaintiff were lawful.

155. The acts or omissions of the Defendant Officers were the moving force behind, and the proximate cause of, injuries sustained by Plaintiff.

156. Defendants Thomas and/or Pazen failed to reasonably train and supervise DPD officers, including Defendant Officers, in issues relating to the use of excessive force, despite the obvious need to do so.

157. Defendants Thomas and/or Pazen knew or should have known that their failure to adequately supervise and train DPD officers in such issues relating to unlawful force was likely to harm individuals like Plaintiff; it was reasonably foreseeable

that their failures in this area would cause the harm or similar harm that Plaintiff has suffered, are suffering, and will suffer.

158. In failing to reasonably train and supervise DPD officers, including Defendant Officers, in such issues relating to the use of force, Defendants Thomas and/or Pazen caused Plaintiff to be subjected to the deprivation of her right to be free from the use of excessive force by law enforcement officers, as guaranteed by the Colorado Constitution, Article II, § 7.

159. Defendants Thomas' and/or Pazen's actions and omissions violated Plaintiff's state constitutional rights and were a substantial and significant contributing cause and proximate cause of Plaintiff's damages

160. Defendants Thomas and/or Pazen did not act upon a good faith and reasonable belief that their actions and omissions in failing to adequately train and supervise DPD officers in tis area were lawful.

161. Defendant Denver is liable for the acts and omission of its agents and/or employees, and for the herein described acts by Individual Defendants, who were acting within the scope and course of their employment.

162. The Individual Defendants' conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which the Individual Defendants must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law and equity, including but not limited to:

a. Declaratory and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

d. Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

    e. Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

        i. Issuance of a formal written apology from each Defendant to Plaintiff;

        ii. The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendants;

        iii. Mandatory training designed to avoid futurel similar misconduct by Defendants;

        iv. Imposition of disciplinary action against appropriate employees of Denver;

    f. Pre-judgment and post-judgment interest at the highest lawful rate;

    g. Attorney's fees and costs; and

    h. Any further relief that the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 23rd day of May, 2023.

        M. TRENT TRANI & ASSOCIATES, P.C.

        *Pursuant to C.R.C.P. 121 §1-26(9), original signature on file at the offices of M. TRENT TRANI & ASSOCIATES, P.C.*

        /s/ M. Trent Trani
        M. Trent Trani, Reg. No. 31001

Plaintiff's Address:
19400 E. 50th Place
Denver, CO  80249